IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KIM THERESE NUTE, )
)
                       Plaintiff, )
)
  vs. )
)
CAROLYN W. COLVIN, acting Commissioner )
of Social Security, )
) No. 3:16-cv-0007-HRH
                     Defendant. )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-431. Plaintiff has timely filed her opening brief,[1] to which defendant has responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

Plaintiff is Kim Therese Nute. Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

On October 2, 2012, plaintiff filed an application for disability benefits under Title II of the Social Security Act. Plaintiff alleged that she became disabled on May 16, 2012.

---

[1]Docket No. 10.

[2]Docket No. 14.

-1-

Plaintiff alleged that she is disabled because of multiple sclerosis, lack of full use of hands, weak legs, depression, fatigue, occasional memory loss/confusion, and weakened eyesight. Plaintiff's application was denied initially. A hearing was held on October 23, 2013. After a supplemental hearing on May 7, 2014, an administrative law judge (ALJ) denied plaintiff's claim. On November 10, 2015, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's June 4, 2014 decision the final decision of the Commissioner. On January 8, 2016, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

General Background

Plaintiff was born on August 24, 1964. She was 47 years old at the time of the hearing. Plaintiff has a 9th grade education. Plaintiff is married and lives with her husband in the lodge that they operate. Plaintiff's past relevant work includes work as an accounting clerk, electronic sales representative, PCB inspector, PCB reworker, short order cook, waitress, Lodge manager, and chamber maid.

The ALJ's Decision

The ALJ first found that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2016."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an

---

[3]Admin. Rec. at 23.

individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since May 16, 2102, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: multiple sclerosis and major depressive disorder...."[6]

At step three, the ALJ found that plaintiff did "not have an impairment or combination

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 23.

[6]Admin. Rec. at 24.

of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[7] The ALJ considered Listing 11.09 (multiple sclerosis) and Listing 12.04 (affective disorders).[8] The ALJ considered the "paragraph B" criteria and found that plaintiff had mild restrictions in activities of daily living; mild difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation.[9] The ALJ also found that the "paragraph C" criteria were not met.[10]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to occasional fingering with the bilateral upper extremities; must avoid moderate exposure to non-weather related extreme cold and non-weather related extreme heat; and work [is] limited to 1-2 step tasks involving only simple work-related decisions with few, if any, work place changes.[11]

The ALJ found that plaintiff's pain and symptom statements related to her MS were

---

[7]Admin. Rec. at 24.

[8]Admin. Rec. at 24-25.

[9]Admin. Rec. at 25.

[10]Admin. Rec. at 26.

[11]Admin. Rec. at 26.

"not supported by objective evidence, her treatment seeking behavior, or her treatment providers' observations."[12] The ALJ also found plaintiff's statements less than credible because of "the apparent effectiveness of treatment" and because of the "relatively few symptoms document[ed] in the claimant's treatment records[.]"[13] The ALJ found plaintiff's symptom statements related to her depression less than credible because they were "not supported by her treatment seeking behavior or her treatment providers' observations."[14]

The ALJ gave little weight[15] to Dr. Fraser's opinion.[16] The ALJ gave great weight[17] to Dr. Feigin's opinion[18] and to Dr. Winn's opinion.[19] The ALJ gave no weight to Dr. Cullen's

---

[12] Admin. Rec. at 28.

[13] Admin. Rec. at 29.

[14] Admin. Rec. at 29.

[15] Admin. Rec. at 30.

[16] On December 27, 2012, Shirley Fraser, M.D., opined that plaintiff could occasionally lift/carry 50 pounds, frequently lift/carry 10 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to push/pull and reaching, was limited as to handling, fingering, and feeling; and should avoid all exposure to extreme heat. Admin. Rec. at 80-81.

[17] Admin. Rec. at 30.

[18] On April 5, 2013, Ron Feigin, M.D., opined that plaintiff was capable of understanding and remembering simple 1-2 step tasks and was "able to sustain concentration, persistence and pace for simple 1-2 step tasks[.]" Admin. Rec. at 82-83.

[19] Danelle R. Winn, Ph.D., examined plaintiff on March 21, 2013 and opined that plaintiff "should be cognitively capable of understanding, remembering, and carrying out simple directions that would be involved in the completion of repetitive work tasks...." Admin. Rec. at 318.

and Dr. Downs' opinions.[20] The ALJ gave limited weight to the third-party testimony of plaintiff's husband.[21]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[22]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" including motel/hotel housekeeper, storage facility rental clerk, and self-service store attendant.[23]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from May 16, 2012, through the date of this decision...."[24]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal

---

[20] Admin. Rec. at 31. Dr. Cullen and Dr. Downs were treating physicians and their opinions are discussed in detail below.

[21] Admin. Rec. at 32. Plaintiff's husband completed a third-party function report on October 28, 2012. Admin. Rec. at 206-213.

[22] Admin. Rec. at 32.

[23] Admin. Rec. at 33-34.

[24] Admin. Rec. at 34.

standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff argues that the ALJ erred in finding her pain and symptom statements less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has

alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1281). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

The ALJ found plaintiff's pain and symptom statements less than credible because "relatively few symptoms [were] documented in [her] treatment records", the Tysabri infusions appeared to be reasonably effective in treating her MS, and her statements were

not supported by her treatment-seeking behavior, the objective medical evidence, or her treatment providers' observations.[25] Plaintiff argues that these were not clear and convincing reasons.

The first reason given by the ALJ, that there were relatively few symptoms documented in plaintiff's treatment records, was not a clear and convincing reason. First, it is not entirely clear what the ALJ meant by "documented." But, assuming that the ALJ was referring to plaintiff's self-reports of symptoms, throughout 2012 and 2013, plaintiff consistently reported paresthesia, rash, numbness with dulled sensation on her right side, hand numbness, fatigue, reduced sensation in her fingers, decreased attention span and concentration, weakness, poor coordination, trouble walking, and trouble holding and carrying things.[26] And, both Dr. Cullen and Dr. Downs listed numerous symptoms as support for their opinions.[27]

The second reason given by the ALJ was that the Tysabri infusions appeared to be reasonably effective in treating plaintiff's MS. This finding is not supported by the record. Plaintiff had infusions from January 2013 through September 2013. On April 16, 2013, plaintiff reported to Dr. Downs that despite the Tysabri infusion, her walking was getting

---

[25] Admin. Rec. at 29.

[26] Admin. Rec. at 264, 268, 278-79, 284 & 387.

[27] Admin. Rec. at 457, 459 & 466.

worse and that she was getting "abnormally fatigued...."[28] On the same day, Dr. Downs noted that plaintiff continued to be unstable when trying to makes turns when walking and that her attention span and concentration were slightly reduced.[29] On June 10, 2013, plaintiff reported to Dr. Cullen that her right leg pain had not improved after two Tysabri infusions, she still complained of paresthesia and fatigue, and Dr. Cullen noted that "there ha[d] been little change in her symptoms, though hand numbness may have become somewhat worse."[30] And, at the October 2013 hearing, plaintiff testified that she continued to have weakness, heaviness, and some numbness in her legs even with the Tysabri infusions.[31] In sum, the record indicates that plaintiff's symptoms were getting slightly worse, or at least not better.

The next reason given by the ALJ was that plaintiff's statements were not supported by her treatment seeking behavior. When assessing credibility, an ALJ may consider "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Here, plaintiff had legitimate reasons for not seeking treatment for her MS and depression, including that she lived in a remote location,[32] that she lacked insurance at times and therefore may not have

---

[28]Admin. Rec. at 335.

[29]Admin. Rec. at 336.

[30]Admin. Rec. at 387-388.

[31]Admin. Rec. at 49-50.

[32]Admin. Rec. at 335.

been able to afford treatment,[33] and that she had a fear of injections and some MS treatments require self-injections.[34] Plaintiff's treatment-seeking behavior was not a clear and convincing reason for finding plaintiff's pain and symptom statements less than credible.

Finally, the ALJ found that plaintiff's pain and symptom statements were not supported by objective medical evidence, which can include her treatment providers' observations. SSR 16-3p. This was a clear and convincing reason to find plaintiff's symptoms less than credible. Dr. Downs' and Dr. Cullen's treatment notes contain relatively little objective support for plaintiff's pain and symptom statements. Dr. Cullen found plaintiff's hand grip weaker on the right and that she had poor fine motor activity and hypoesthesia in her fingers.[35] Dr. Downs noted on two occasions that plaintiff seemed to be unstable on turns when walking[36] and found that plaintiff's "[f]ine motor is slow and a bit dyspraxic, particularly on the right."[37] Plaintiff also complained of visual problems, but on April 16, 2013, Dr. Swanson found that "from an ocular standpoint, Kim is doing well."[38] But, an ALJ may not rely solely on the lack of objective medical evidence in finding that a claimant's

---

[33] Admin. Rec. at 264.

[34] Admin. Rec. at 280 & 316.

[35] Admin. Rec. at 265, 269, 285 & 388.

[36] Admin. Rec. at 279 & 336.

[37] Admin. Rec. at 279.

[38] Admin. Rec. at 334.

subjective statements are not credible. Fair, 885 F.2d at 601. Because the lack of objective medical evidence was the only clear and convincing reason the ALJ gave for finding plaintiff's pain and symptom statements less than credible, the ALJ erred as to credibility.

Plaintiff next argues that the ALJ erred in rejecting Dr. Cullen's opinions. On October 14, 2013, Dr. Cullen opined that plaintiff was "unable to work" because of her MS symptoms, which "include instability with ambulation, reduced concentration, right-sided numbness, blurred vision with fatigue, and hand numbness."[39] Dr. Cullen stated that "[t]hese symptoms are debilitating and have left her unable to regularly perform all of her normal daily activities."[40] On February 2, 2014, Dr. Cullen opined that plaintiff could sit for 1-2 hours; could stand/walk for 1-2 hours; would need a 1/2 hour break every two hours; could rarely lift up to 10-20 pounds and never 50 pounds; could occasionally twist, stoop, and crouch/squat; could handle and finger 20% of the day; could reach in front with her arms 30% of the day; and could reach overhead 10% of the day.[41]

Dr. Cullen was a treating physician. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and

---

[39] Admin. Rec. at 457.

[40] Admin. Rec. at 457.

[41] Admin. Rec. at 467-468.

convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Dr. Cullen's opinions were contradicted by Dr. Fraser's opinion. Thus, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Cullen's opinions.

The ALJ gave no weight to Dr. Cullen's October 2013 opinion because it was inconsistent with his documented examination findings and because it was conclusory.[42] The ALJ gave no weight to Dr. Cullen's February 2014 opinion because it was inconsistent with his documented examination findings.[43] Plaintiff argues that these were not legitimate reasons for rejecting Dr. Cullen's opinions.

Dr. Cullen's October 2013 opinion was conclusory because he simply stated that plaintiff could not work and did not indicate what specific limitations plaintiff had. "[A]n ALJ need not accept a treating physician's opinion that is conclusory and brief...." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ may also reject a treating physician's opinion if it is unsupported by his treatment notes. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). Dr. Cullen found plaintiff's hand grip weaker on the right, that she

---

[42]Admin. Rec. at 31.

[43]Admin. Rec. at 31.

had poor fine motor activity, and that she had hypoesthesia (reduced sense of touch) in her fingers.[44] These are the only documented examination findings in Dr. Cullen's treatment notes. These limited findings may support Dr. Cullen's opinion as to the limitations plaintiff had with lifting, handling, fingering, and reaching. But, they do not support the other limitations that Dr. Cullen opined plaintiff had. Because Dr. Cullen's opinions were not entirely support by his treatment notes, the ALJ did not err in rejecting his opinions.

Plaintiff next argues that the ALJ erred in rejecting Dr. Downs' opinion. On October 23, 2013, Dr. Downs opined that plaintiff could occasionally and frequently lift less than 10 pounds; could stand/walk for less than 2 hours; could sit for less than 6 hours; was limited as to pushing/pulling; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders/ropes/scaffolds; was limited as to reaching, handling, fingering, and feeling; and should avoid all exposure to extreme cold and hazards.[45] Dr. Downs explained that it was

> [d]ifficult to provide exact answers to these questions as she fluctuates from day to day and the limitations are not objectively determinable in the office. The above answers are based on the patient's self-report of a bad day and are reasonable given her diagnosis and my observations in the office. She is limited in carrying due to frequent dropping things, on standing & walking due to fatigue (which is the most common cause of disability in MS patients) and lifting, due to [illegible] stiffness in her mus-

---

[44]Admin. Rec. at 265, 269 & 388.

[45]Admin. Rec. at 459-462.

cles.[46]

Dr. Downs also noted that "[b]ased on office observations, I believe there are cognitive limitations and depression."[47]

As with Dr. Cullen's opinion, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Downs' opinion. The ALJ gave no weight to Dr. Downs' opinion because "Dr. Downs clearly indicated that his opinion was based on claimant's self-report" and the ALJ found plaintiff's statements less than credible.[48] The ALJ also rejected Dr. Downs' opinion because it was not supported by his treatment notes.[49] Plaintiff argues that neither of these reasons were legitimate.

As for the first reason, "[a]n ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999)). But, here, as discussed above, the ALJ erred in finding plaintiff's pain and symptom statements less than credible. And, Dr. Downs' opinion was not solely based on plaintiff's self-reports. Dr. Downs also based his

---

[46]Admin. Rec. at 459.

[47]Admin. Rec. at 465.

[48]Admin. Rec. at 31.

[49]Admin. Rec. at 31.

opinion on his "observations in the office."[50] The first reason the ALJ gave for rejecting Dr. Downs' opinion was not legitimate.

As for the second reason, that Dr. Downs' opinion was inconsistent with his treatment notes, Dr. Downs noted on two occasions that plaintiff seemed to be unstable on turns when walking[51] and found that plaintiff's "[f]ine motor is slow and a bit dyspraxic, particularly on the right."[52] But, Dr. Downs explained his limited clinical findings. He stated that plaintiff's pain and symptoms "fluctuate from day to day" and that limitations "are not objectively determinable in the office."[53] In other words, Dr. Downs explained why there was little objective evidence in his treatment notes. Thus, this was not a legitimate reason for rejecting Dr. Downs' opinion.

Because neither of the reasons the ALJ gave were legitimate, the ALJ erred as to Dr. Downs' opinion. This error was not harmless. "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination[.]'" Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting Stout, 454 F.3d at 1055–56). "'[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different

---

[50]Admin. Rec. at 459.

[51]Admin. Rec. at 279 & 336.

[52]Admin. Rec. at 279.

[53]Admin. Rec. at 459.

disability determination.'" Id. (quoting Stout, 454 F.3d at 1056). If Dr. Downs' opinion is considered, plaintiff's RFC would include additional limitations, including a limitation that she could sit for less than six hours.

Lastly, plaintiff argues that the ALJ erred at step five. At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform", including motel/hotel housekeeper, storage facility rental clerk, and self-service store attendant.[54] Plaintiff argues that two of these jobs are inconsistent with the ALJ's RFC. The ALJ found that plaintiff had the capacity for "work limited to 1-2 step tasks involving only simple work-related decisions...."[55] The storage facility rental clerk job and the self-service store attendant job are both reasoning level 3 jobs. The Ninth Circuit has held "that there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015).

Defendant concedes that "the ALJ improperly relied on the storage rental clerk and self-service store attendant positions[.]"[56] But, this error was harmless because the ALJ's step five finding remains supported by one occupation: motel/hotel housekeeper. At step five,

---

[54]Admin. Rec. at 34.

[55]Admin. Rec. at 26.

[56]Defendant's Responsive Brief in Opposition to Plaintiff's Motion at 7, Docket No. 7.

the ALJ must consider whether there are jobs that exist in significant numbers in the national economy that the claimant can do. "'[W]ork exists in the national economy when it exists in significant numbers either in the region where [the individual lives] or in several other regions of the country.'" Gutierrez v. Comm'r of Social Sec., 740 F.3d 519, 523 (9th Cir. 2014) (quoting 20 C.F.R. § 416.966(a)). The vocational expert testified that there are 126,000 motel/hotel housekeeper jobs nationally and 423 in Alaska.[57] The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number of jobs'" but has held that 25,000 jobs in the national economy and "several hundred jobs" in a local economy can constitute a significant number. Id. at 528-29. Thus, the ALJ's step five finding, which was properly only based on the motel/hotel housekeeper job, was still supported by substantial evidence.[58]

Because the ALJ erred as to plaintiff's credibility and Dr. Downs' opinion, the court must decide whether to remand for an award of benefits or for further proceedings. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical

---

[57]Admin. Rec. at 241.

[58]This evidence would have also supported a finding of "not disabled" at Step Four. Contrary to what the ALJ found, the vocational expert testified that plaintiff could perform her past relevant work as a chamber maid, which has the same DOT code as that of a motel/hotel housekeeper. Admin. Rec. at 240-241.

opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

A remand for further proceedings is appropriate here because there is no testimony from a vocational expert that someone with the limitations found by Dr. Downs or as plaintiff described would be unable to work.

## Conclusion

Based on the foregoing, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 12th day of August, 2016.

/s/ H. Russel Holland
United States District Judge